UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHIE R. FLORSHEIM, | ) | |
| | ) | |
| Plaintiff, | ) | 22 C 29 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| FUNKHOUSER VEGOSEN LIEBMAN & DUNN LTD., an Illinois corporation, VANCE L. LIEBMAN, WILSON P. FUNKHOUSER, NANCY F. PRICE, KIRA A. PRICE, KYLE A. PRICE, and BARBEL M. DAHLSTROM, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kathie Florsheim brings this diversity suit against the law firm Funkhouser Vegosen Liebman & Dunn Ltd. and two of its partners, Vance Liebman and Wilson Funkhouser, asserting claims related to the administration of a trust to which Florsheim is a beneficiary. Doc. 34. (Four other defendants were joined as necessary parties, *id*. at ¶¶ 1, 10-13, but they can be ignored for present purposes.) Defendants move under Civil Rule 12(b)(6) to dismiss the complaint for failure to state a claim. Doc. 38. The motion is granted in part and denied in part.

**Background**

In resolving Defendants' Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Florsheim's brief opposing dismissal, so long as those additional facts "are

1

consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Florsheim as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

In 1993, Florsheim's mother, Nancy Florsheim, created a trust with the assistance of the Funkhouser firm. Doc. 34 at ¶¶ 24-25. The firm drafted a declaration of trust naming Nancy as the trustee, a position she held until her death in September 2014. *Id*. at ¶¶ 23, 34-35; Doc. 34-1. At that point, Liebman and Funkhouser became co-trustees responsible for managing the property residing in the trust—the trust estate—in accordance with the trust's terms. Doc. 34 at ¶¶ 2, 36; Doc. 34-1 at 4. Florsheim and her sister, Nancy Price (also known as "Abbie Price"), are the trust's primary beneficiaries, and the trust's terms entitle them to a portion of the estate after specified gifts are made to other beneficiaries. Doc. 34 at ¶¶ 10, 39; Doc. 34-1 at 4.

Liebman and Funkhouser are entitled to "reasonable compensation" for their services as trustees in administering the trust. Doc. 34 at ¶ 38. They bill the estate the time they spend on trust administration services. *Id*. at ¶ 37. They also bill the estate for other expenses incurred in administering the trust, including legal work performed by the Funkhouser firm as the trust's outside counsel. *Id*. at ¶¶ 37, 54.

To date, Liebman and Funkhouser have billed the estate over $3 million, more than 12% of its $25 million value. *Id*. at ¶ 55. The billings include more than $1 million—including 600 hours billed by Funkhouser at more than $500 per hour—to dispose of a few million dollars' worth of personal property. *Id*. at ¶¶ 56-57. Many of the tasks performed by Funkhouser, such

as cataloguing the property to be sold, could have been carried out by other personnel at a much lower rate. *Id*. at ¶ 57.

Many of the invoices submitted to the estate do not adequately describe the work performed. *Id*. at ¶ 58. Terse narratives such as "Work with Wilson Funkhouser" or "Email [recipient]" make it difficult to assess whether the amounts billed were reasonable. *Id*. at ¶ 59. Moreover, many of the invoices are in draft form, compounding the difficulty of ascertaining whether the billings were reasonable. *Id*. at ¶ 60.

In September 2018, Florsheim reached an oral agreement with Defendants under which the estate would receive a $250,000 discount on the firm's billings. *Id*. at ¶ 64. As a condition of the agreement, Defendants agreed to expeditiously sell a 120-acre property in Lake Forest, Illinois, owned by the trust and to otherwise wind up the trust. *Id*. at ¶¶ 64, 70. Defendants failed to meet those conditions. *Id*. at ¶ 64. Florsheim did not release any claims against Defendants in connection with the agreed fee discount. *Ibid*.

In October 2020, Florsheim purchased the Lake Forest property from the trust, with the transaction memorialized in a written purchase agreement. *Id*. at ¶ 72; Doc. 38-1. Upon taking possession, Florsheim discovered that the property, which Defendants had been responsible for maintaining, had fallen into disrepair. Doc. 34 at ¶¶ 72-73. The grounds were overrun with carpenter ants and mice; electrical lines were dangerously left on the roof of the groundskeeper's residence; and several structures and surfaces across the property need to be repainted. *Id*. at ¶¶ 73-76. Repairing the damage will cost hundreds of thousands of dollars. *Id*. at ¶ 77.

Despite the condition of the Lake Forest property, Defendants had billed the estate a considerable amount for its upkeep. *Id*. at ¶ 79. The estate paid nearly $350,000 to two individuals to maintain the property between September 2014 and July 2020, but Defendants

3

failed to supervise those individuals, which allowed them to collect checks even though they largely failed to maintain the property. *Id*. at ¶ 80. Defendants also billed the estate $3,000 per month during the winter months for snow removal, regardless of whether snow removal services were necessary. *Id*. at ¶ 81. As a point of comparison, Florsheim has spent only $1,500 total for snow removal services since taking possession of the property. *Ibid*. Defendants also failed to pay the property's utility bills in a timely manner, resulting in late fees charged to the estate. *Id*. at ¶ 82.

Florsheim also alleges that Defendants granted Price access to the Lake Forest property prior to its conveyance to Florsheim. *Id*. at ¶ 86. This allowed Price to remove personal property and fixtures that were part of the estate and violated the terms of the trust and an agreement between Florsheim and Price that neither be on the property without a third party present. *Ibid*.

## Discussion

Florsheim asserts state law claims against Defendants for breach of trust, breach of fiduciary duty, legal malpractice, and unjust enrichment, and she also demands an accounting of the trust. *Id*. at ¶¶ 87-113. Her claims are premised on both the duties Defendants owed her as a beneficiary of the trust and the duties they owed the trust as its outside counsel. *Id*. at ¶¶ 92, 97.

**I.     Florsheim's Right to Sue Defendants as the Trust's Outside Counsel**

Defendants contend that Florsheim cannot sue them in their capacity as the trust's outside counsel. Doc. 38-2 at 10. The argument is based on the principle that "an attorney owes a professional obligation only to his client, not to nonclient third parties." *Jewish Hosp. of St. Louis v. Boatmen's Nat'l Bank of Belleville*, 633 N.E.2d 1267, 1275 (Ill. App. 1994). Under this rule, counsel to a trust "does not have an attorney-client relationship with the beneficiaries," and

4

his "'first and only allegiance' is to the estate." *Gagliardo v. Caffrey*, 800 N.E.2d 489, 496 (Ill. App. 2003) (quoting *In re Estate of Kirk*, 686 N.E.2d 1246, 1250 (Ill. App. 1997)). As a general rule, therefore, "a trust beneficiary may not sue a third party on behalf of the trust." *Doermer v. Oxford Fin. Grp., Ltd.*, 884 F.3d 643, 648 (7th Cir. 2018); *see also Ready v. Ready*, 178 N.E.2d 650, 653 (Ill. App. 1961) ("The right to sue in the ordinary case vests only in the trustee.").

The general rule is subject to an exception "where the trustee could maintain an action against a third party but improperly refuses to bring suit." *Doermer*, 884 F.3d at 648; *see also Jewish Hosp. of St. Louis*, 633 N.E.2d at 1275 ("[U]nder limited circumstances, a nonclient may maintain either a negligence action or a third-party-beneficiary/breach-of-contract action against an attorney."). Ordinarily, a beneficiary must first ask the trustee to maintain an action against a third party before the beneficiary may bring such an action on behalf of the trust. *See Ready*, 178 N.E.2d at 654 ("If the trustee refuses to bring the action after demand, or refuses to act, the beneficiary may bring an action making the third party and the trustee parties defendant."). But a demand is unnecessary where it would be futile. *See Basista v. Alms*, 2015 WL 6641142, *9 (Ill. App. Oct. 30, 2015) (excusing demand as futile given the trustee's conflict of interest); *see also Ex parte Callan Assocs., Inc.*, 87 So. 3d 1161, 1167 (Ala. 2011) (explaining that demand is excused where it would be futile); *Schlegel v. Schlegel Mfg. Corp.*, 258 N.Y.S.2d 587, 589 (App. Div. 1965) (same); Restatement (Third) of Trusts § 107 cmt. c(2) (2012) ("If … the beneficiary can show that the trustee is improperly refusing or neglecting to bring an action, or if the trustee is unavailable or unable to act, the protection of the trust estate may depend on the initiative of a beneficiary.").

Florsheim correctly contends, Doc. 42 at 11, that the exception applies here. Liebman and Funkhouser cannot reasonably be expected to sue each other or their law firm, especially where their allegedly culpable conduct is at issue. *See Basista*, 2015 WL 6641142, at *9 (holding that a trustee's "culpable misconduct would necessitate a trust beneficiary [to] sue for injuries to the trust without making a demand on [the trustee] first"). It follows that Florsheim may, on behalf of the trust, maintain an action against Defendants in their capacity as outside counsel to the trust, and she may do so without first making a demand that they bring the suit on the trust's behalf.

Defendants argue in their reply brief that Florsheim cannot bring a malpractice claim against them because Illinois does not recognize the fiduciary-duty exception to the attorney-client privilege. Doc. 43 at 11-12. Defendants forfeited that argument by raising it for the first time in their reply brief. *See O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived."); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").

The argument fails on the merits in any event. The fiduciary-duty exception to the attorney-client privilege provides that a trust beneficiary is entitled "to the production of legal advice rendered to the trustee relating to the administration of the trust." *MDA City Apts. v. DLA Piper LLP*, 967 N.E.2d 424, 429 (Ill. App. 2012) (emphasis removed); *see also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011) (explaining that the rule developed based on the idea "that when a trustee obtained legal advice to guide the administration of the trust, and not for the trustee's own defense in litigation, the beneficiaries were entitled to the production of

6

documents related to that advice"). So even if Defendants were correct that Illinois law would not entitle Florsheim to the production of certain communications regarding administration of the trust—an issue on which the court takes no position—that would merely limit the scope of discoverable information. It would not mean that Florsheim could not pursue her legal malpractice claim against Defendants.

## II.     Timeliness of the Legal Malpractice Claim

Legal malpractice claims in Illinois are subject to a two-year statute of limitation and a six-year statute of repose. *See* 735 ILCS 5/13-214.3. The two-year limitations period begins to run when the "the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b); *see City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*, 32 F.3d 277, 282 (7th Cir. 1994) (explaining that a statute of limitations "start[s] to run when the plaintiff 'knew or should have known of the existence of the right to sue'") (quoting *Rozny v. Marnul*, 250 N.E.2d 656, 664 (Ill. 1969)). The six-year statute of repose, conversely, begins to run at the time of the conduct in question and without regard to whether the plaintiff knew or should have known of her injury. *See* 735 ILCS 5/13-214.3(c) (providing that "an action … may not be commenced in any event more than 6 years after the date on which the act or omission occurred"); *Ferguson v. McKenzie*, 780 N.E.2d 660, 664 (Ill. 2001) ("A statute of repose … is intended to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his or her cause of action.").

Defendants argue that portions of Florsheim's legal malpractice claim for their allegedly excessive or inadequately explained fees are untimely. Doc. 38-2 at 13-15. Specifically, Defendants contend that Florsheim knew or should have known of any alleged overbillings for

7

legal services disclosed to the estate by September 2018, when she accepted a $250,000 discount on the fees charged to the estate, *id*. at 14; Doc. 43 at 14, yet she did not file this suit until January 4, 2022, Doc. 1, more than two years later. Defendants accordingly ask the court to hold untimely Florsheim's legal malpractice claim to the extent it seeks redress for allegedly excessive or inadequately explained fees appearing on bills provided to Florsheim prior to January 4, 2020. Doc. 38-2 at 14.

At the motion hearing, Doc. 44, Florsheim's counsel conceded that Florsheim was by September 2018 aware that at least some fees charged to the estate were excessive. That concession is dispositive. Florsheim's acquiring knowledge of the alleged overbillings commenced the limitations period as to bills provided by September 2018 because she knew or should have known of her past injuries as of that date. And because she was on notice of the alleged overbillings, she should have known of subsequent overbillings as they occurred. That Florsheim may not have known the full scope of the overbillings (for invoices disclosed both before and after September 2018) does not save her claim from a timeliness defense. *See Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 901 (Ill. 1995) ("There is no requirement that a plaintiff must discover the full extent of her injuries before the statute of limitations begins to run."); *see also Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 937 (7th Cir. 1996) ("The fact that the full value of that right may not become clear until the plaintiff later discovers the full extent of her injury does not toll the statute from running."). Rather, it is enough that Florsheim had "sufficient information concerning [the] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct [was] involved." *Aebischer v. Stryker Corp.*, 535 F.3d 732, 733 (7th Cir. 2008) (quoting *Daubach v. Honda Motor Co.*, 707 N.E.2d 746, 750 (Ill. App. 1999)); *see also Carlson v. Michael Best & Friedrich LLP*, 186 N.E.3d 478, 498 (Ill.

8

App. 2021) (holding that a plaintiff was put on inquiry notice of a legal malpractice claim at the time his accountant notified him of a potential problem with a settlement negotiated by his attorneys).

Florsheim's legal malpractice claim for allegedly excessive or inadequately explained fees disclosed on bills provided to her prior to January 4, 2020, is therefore time-barred. The dismissal does not reach legal malpractice allegations premised on conduct unrelated to the excessive or inadequately explained fees, as Defendants do not make timeliness arguments regarding those aspects of the legal malpractice claim. Doc. 38-2 at 13-15. Nor does the dismissal reach claims based on fees for Defendants' services in their capacities as trustees. Defendants submit, and Florsheim does not contest, that those claims are subject to a five-year statute of limitation and no statute of repose under 735 ILCS 5/13-205. Doc. 38-2 at 13-14; Doc. 42 at 14; Doc. 43 at 13. So, even if Florsheim was on notice of those claims in September 2018, thereby commencing the limitations period, her complaint was filed within the five-year limitations period.

## III. The Trust Agreement's Exculpatory Clause

The trust agreement includes an exculpatory provision stating that Defendants may not be held liable for any action "taken in connection with the administration of [the] trust" unless such action involved a trustee's "willful misconduct or gross negligence." Doc. 34-1 at 46. To plead gross negligence, Florsheim must allege facts permitting the inference that Defendants acted "with 'reckless indifference to or deliberate disregard of' [their] duties or that [their] actions were 'without the bounds of reason.'" *Alonso v. Weiss*, 932 F.3d 995, 1004 (7th Cir. 2019) (quoting *Sherman v. Ryan*, 911 N.E.2d 378, 397 (Ill. App. 2009)). Defendants contend that

9

Florsheim does not plead such conduct, dooming all claims concerning their administration of the trust. Doc. 38-2 at 8-10.

Florsheim argues that the exculpatory provision does not foreclose her claims. Doc. 42 at 7-8. The Illinois Trust Code provides that exculpatory provisions are invalid "unless the trustee proves that the exculpatory term is fair under the circumstances and that its existence and contents were adequately communicated to the settlor." 760 ILCS 3/1008(b). In Florsheim's view, Defendants cannot make this showing. Doc. 42 at 8.

The court need not resolve that issue because Florsheim pleads that Defendants engaged in (at least) gross negligence. Specifically, Florsheim alleges that Defendants spent more than 12% of the estate's value—over $3 million for a $25 million trust—in administering the estate. Doc. 34 at ¶ 55. The alleged charges include Funkhouser's billings at $500 per hour to perform simple tasks that could have been delegated to others, *id*. at ¶ 57, and hundreds of thousands of dollars for work on the Lake Forest property that the estate largely did not receive due to Defendants' failures to supervise, *id*. at ¶ 80. Drawing all reasonable inferences in Florsheim's favor, Defendants' actions were at least grossly negligent, if not reckless or willful. *See Harry & Jeanette Weinberg Found. Inc. v. ANB Inv. Mgmt. & Tr. Co.*, 1997 WL 652342, at *2-3, *6 (N.D. Ill. Oct. 10, 1997) (holding that a similar exculpatory provision did not bar a suit against a corporate trustee that had made trades substantially increasing its client's tax liability despite the client's expressed goal to minimize such liability). The trust agreement's exculpatory provision accordingly does not bar Florsheim's claims, at least at the pleading stage.

### IV. The Purchase Agreement's Exculpatory Clause

In the purchase agreement for the Lake Forest property, Florsheim agreed to take the property from the trust "as is" and "with all faults." Doc. 38-1 at 5. Florsheim further agreed not

to sue Defendants for "any claim, loss, or liability concerning … the value, nature, quality, or condition of the property," *ibid*., and "waive[d] any and all claims [that she] may have against [Defendants] … related to the sale and conveyance of the [property]," *id*. at 12-13. (Defendants attached a copy of the purchase agreement to their brief supporting the motion to dismiss, and Florsheim does not object to its consideration. Doc. 42 at 3 n.4.) Defendants contend that those provisions preclude all claims related to the property's condition. Doc. 38-2 at 2-4.

Florsheim agrees that she cannot seek damages based on the condition of the Lake Forest property. Doc. 42 at 4. In fact, her complaint specifically disclaims any recovery for such damages. Doc. 34 at ¶ 84. Florsheim instead seeks to recover for Defendants' alleged overbillings in their management of the property, Doc. 42 at 4, which she says the property's poor condition merely serves to underscore, Doc. 34 at ¶ 84. In reply, Defendants submit that Florsheim's claims for billings related to the property are in substance claims concerning the condition of the property itself. Doc. 43 at 5.

Defendants' position is not without force. A suit alleging that a trustee breached his fiduciary duty to properly maintain property held by the trust may be tantamount to a suit for the condition of the property itself. But while it is one thing to fail to manage a property, it is another to overbill for expenses related to the property. Suppose a trustee delivers property to a beneficiary in perfect condition but had charged exorbitant fees to maintain it. A beneficiary's claim for breach of fiduciary duty for the overbillings, even if those billings relate to the property, does not turn on the value or condition of the property. Here, Florsheim's claims likewise need not turn on the value or condition of the Lake Forest property: It is possible to conclude that Defendants spent wastefully (such as paying for services that were never received

11

or were unnecessary) without allowing Florsheim to recover damages arising from the property's value or condition. The claims related to the Lake Forest property accordingly survive dismissal.

## V. The September 2018 Fee Discount

Defendants contend that Florsheim released all claims related to the administration of the trust by accepting a $250,000 fee discount as part of an oral agreement struck with the Funkhouser firm in September 2018. Doc. 38-2 at 5. But the complaint specifically alleges that Florsheim did not release any claims in accepting the fee reduction. Doc. 34 at ¶ 64. At this juncture, the court must accept Florsheim's contention that no such release occurred as part of the oral agreement. *See Zahn*, 815 F.3d at 1087.

## VI. The Unjust Enrichment Claim

The complaint asserts an unjust enrichment claim. Doc. 34 at ¶¶ 101-106. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. 2004). Thus, "[a] claim for unjust enrichment cannot be asserted when a specific contract exists between the parties and concerns the same subject matter." *DOD Techs. v. Mesirow Ins. Servs., Inc.*, 887 N.E.2d 1, 9 (Ill. App. 2008); *see also First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) ("Under Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties.").

Defendants contend that because the declaration of trust governs the trustee-beneficiary relationship, it precludes an unjust enrichment claim. Doc. 38 at 12. The court will assume that the declaration of trust, if it contained a provision governing the subject matter of this dispute, would preclude Florsheim's unjust enrichment claim. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324-25 (7th Cir. 2021) (holding that a plaintiff could not recover in unjust enrichment where a contract covered its dispute with the defendant); *People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) (same). But Defendants merely point out that a declaration of trust exists, not that its provisions govern their relationship with Florsheim as it relates to her unjust enrichment claim. *Ibid.*; Doc. 43 at 12. That is not enough to bar her unjust enrichment claim, for the instrument's mere existence does not guarantee that it controls the dispute underlying that claim. *See Stark Excavating, Inc. v. Carter Constr. Servs., Inc.*, 967 N.E.2d 465, 474 (Ill. App. 2012) (explaining that the existence of a contract does not preclude recovery in unjust enrichment for claims not governed by the contract); *Clean Harbors Servs., Inc. v. Ill. Int'l, Port Dist.*, 309 F. Supp. 3d 556, 568 (N.D. Ill. 2018) (same). Indeed, it is a basis tenet of trust law that some of a trustee's duties to a beneficiary "flow[] not from the trust instrument but from the relationship of trustee and beneficiary." *Fuller Fam. Holdings, LLC v. N. Tr. Co.*, 863 N.E.2d 743, 754 (Ill. App. 2007); *see also* Restatement (Second) of Trusts § 164 cmt. h (1959) ("Some of the duties of the trustee … may not be imposed by the terms of the trust, but may arise from the nature of the relationship."). The unjust enrichment claim accordingly survives dismissal.

## VII. The Accounting Claim

Finally, Florsheim seeks an accounting of the fees billed to the estate, alleging that Defendants have provided inadequate records in response to her inquiries. Doc. 34 at

¶¶ 107-113. "To state a claim for the equitable relief of an accounting, a plaintiff must allege the absence of an adequate remedy at law." *Kempner Mobile Elec., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005). "Additionally, there must be present a '(1) breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature.'" *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003) (quoting *Mann v. Kemper Fin. Cos., Inc.*, 618 N.E.2d 317, 327 (Ill. App. 1992)); *see also Kempner*, 428 F.3d at 715 (listing the same requirements).

Defendants argue that Florsheim does not state an accounting claim because she truly wants not an accounting, but "additional discounts" on the fees charged to the estate. Doc. 38-2 at 12-13 (emphasis removed). In support, Defendants point out that they have already produced some records of fees charged to the estate. *Id*. at 13; Doc. 34 at ¶¶ 58-60. Defendants' argument fails because, at this stage, the complaint is read to mean what it says: Florsheim seeks an accounting, not additional discounts. Doc. 34 at ¶¶ 107-113. Nor does the fact that Defendants have produced some records bar the claim, as Florsheim alleges that those records are incomplete and inadequate to understand the work that Defendants performed. *See Chi. City Bank & Tr. Co. v. Lesman*, 542 N.E.2d 824, 826-27 (Ill. App. 1989) (explaining that a plaintiff may demand a trust accounting where previously produced records were inadequate). Defendants further argue that the claim fails because Florsheim fails to allege fraud or the breach of fiduciary duty. Doc. 38-2 at 13. But as explained above, Florsheim has stated a fiduciary duty claim as it relates to Defendant's management of the trust. The accounting claim therefore survives dismissal.

**Conclusion**

Defendants' motion to dismiss is granted as to Florsheim's legal malpractice claim, but only to the extent described above. The dismissal is with prejudice, as Florsheim gives no basis to believe that the flaw with the dismissed portion of the claim could be cured with repleading. In all other respects, the motion is denied.

October 25, 2022

_____
United States District Judge